Anthony VELASQUEZ, Complainant–
Appellant,

v.

DEPARTMENT OF HIGHER EDU-
CATION, Trustees of the State Colleges
in Colorado, and Adams State College,
Respondents–Appellees,

and

State Personnel Board, Appellee.

No. 02CA1740.

Colorado Court of Appeals,
Div. II.

Sept. 11, 2003.

Certiorari Denied June 21, 2004.

Mark A. Schwane, Denver, Colorado, for Complainant–Appellant.

Ken Salazar, Attorney General, Danielle Moore, Assistant Attorney General, Denver, Colorado, for Respondents–Appellees.

No Appearance for Appellee.

Opinion by Judge WEBB.

Complainant, Anthony Velasquez (employee), appeals an order of the State Personnel Board upholding his layoff. We affirm.

Employee was a certified employee of Adams State College holding a classified position under the state personnel system. He did renovation work for the Housing Services Department, which received no regular state funding. When special funding for his position from a bond issue ran out and interim funds were exhausted, the college notified him that his job would be abolished and he would be discharged.

Employee sought review of his discharge. Following a hearing, the administrative law judge (ALJ) found that the discharge was not arbitrary, capricious, or contrary to rule or law.

Employee then appealed the ALJ's decision to the Board on the grounds that, as relevant here, the ALJ erred in placing the burden of proof on him, in finding the college lacked sufficient funds to continue his position, and in finding the college used an appropriate layoff matrix. The Board adopted the ALJ's decision without explanation.

## I.

■ Employee first contends that because all discharges, whether disciplinary or administrative, of certified state personnel are deprivations of property interests, placing the burden of proof on an employee in a job abolishment case deprives the employee of a property interest guaranteed by article XII, section 13(8), of the Colorado Constitution without due process. We disagree.

■ Where the Board adopts an ALJ's determinations, we affirm this ultimate conclusion if it is supported by the evidentiary record and has a reasonable basis in the law. *Renteria v. Dep't of Labor & Employment,* 907 P.2d 619 (Colo.App.1994), *aff'd, Renteria v. Dep't of Pers.,* 811 P.2d 797 (Colo.1991)(*Renteria* ).

■ "Except as otherwise provided by statute, the proponent of an order shall have the burden of proof" in an administrative hearing. Section 24–4–105(7), C.R.S.2002. The "proponent of an order" is the person who brings forward a matter for litigation or action. *Dep't of Insts. v. Kinchen,* 886 P.2d 700 (Colo.1994)(*Kinchen* ).

■ However, "[t]he procedural requirement that a certified state employee petition for a hearing before the Personnel Board to contest a disciplinary action imposed by the appointing authority does not conclusively determine which party ... is the proponent of an order." *Kinchen, supra,* 886 P.2d at 706. Rather, under *Kinchen* determining the "proponent of an order" is context-specific, based on the particular constitutional, statutory, and regulatory provisions at issue.

■ In *Brennan v. Department of Local Affairs,* 786 P.2d 426 (Colo.App.1989), a division of this court rejected the argument that an employee who had been laid off should not bear the burden of proving that funds were available. However, because of the later decisions in *Renteria* and *Kinchen,* we examine the significant distinctions between disciplinary discharge and discharge for job abolishment. On that basis, we conclude that here employee is the proponent who should bear the burden of proof.

A certified state employee who had been "dismissed, suspended, or otherwise disciplined" can appeal to the State Personnel Board, pursuant to article XII, section 13(8), of the Colorado Constitution. In *Kinchen,* the supreme court held that in an appeal of a disciplinary action under this article, the employer must bear the burden of proof to protect the "central" interest of article XII, "that state employees are hired and discharged on the basis of merit and fitness." *Kinchen, supra,* 886 P.2d at 707.

The supreme court distinguished but did not overrule *Renteria,* which held that the complaining employee bore the burden of proof regarding loss of duties in a job reallocation. The supreme court noted that the reallocation process does not implicate constitutional protection against discharge without just cause, and explained:

A reallocation decision is part of the necessary review of work functions that an employer must make periodically to assure organizational efficiency. Unlike a hearing regarding discipline of an employee, reallocation decisions do not involve difficult judgments about credibility. Most importantly, such decisions do not involve allegations of misconduct against an employee, implicating the protections against wrongful discipline embodied in Article XII, section 13(8), of the Colorado Constitution.

*Kinchen, supra,* 886 P.2d at 710.

Discharge for job abolishment, like reallocation, is more administrative than disciplinary in nature and thus does not involve credibility judgments arising from contested allegations of employee misconduct. *See* § 24–50–124(1), C.R.S.2002 (in a reduction, employees may be separated from state service due to lack of work, lack of funds, or reorganization); *see also* Board Rule 12–17, 4 Colo.Code Regs. 801 (2001)(defining layoff based on events that do not involve fault of the employee).

■ Whether discharge is for job abolishment or misconduct, the immediate impact on the certified employee—job loss—is the same. However, article XII, section 13(8), describes the circumstances giving rise to dismissal, suspension, or other discipline of a certified employee far differently from rea-

sons for job abolishment: "failure to comply with standards of efficient service or competence, or for willful misconduct, willful failure or inability to perform his duties, or final conviction of a felony or any other offense which involves moral turpitude." *See also* § 24–50–125(1), C.R.S.2002. Hence, a discharge for job abolishment does not implicate state constitutional protections. *Cf. Hughes v. Dep't of Higher Educ.,* 934 P.2d 891 (Colo. App.1997), *overruled on other grounds by Lawley v. Dep't of Higher Educ.,* 36 P.3d 1239 (Colo.2001).

In *Kinchen,* the supreme court also looked to decisions of other courts that impose the burden of proving misconduct on the employer. As to the question before us, other courts have held that an employee is not entitled to due process when the job is abolished as part of a valid reorganization:

> [W]here a public employee has a property interest in continued employment, the employee is not deprived of this interest where his or her position is abolished because state laws creating the property interest, while usually giving rise to a legitimate expectation that disciplinary termination may not occur without adequate procedures, do not create a legitimate expectation that the employee's position will never be abolished.

*Mandel v. Allen,* 889 F.Supp. 857, 866 (E.D.Va.1995), *aff'd,* 81 F.3d 478 (4th Cir. 1996); *see also Duffy v. Sarault,* 892 F.2d 139, 147 (1st Cir.1989)(same); *Detweiler v. Commonwealth of Va. Dep't of Rehab. Servs.,* 705 F.2d 557, 559–60 & n. 2 (4th Cir.1983)(in describing the extent of the property interest of a classified employee in Virginia, distinguishing between discharges for cause and discharges "because of lack of work, reduction in work force, or job abolition," and finding that only discharges for cause require due process); *Hartman v. City of Providence,* 636 F.Supp. 1395, 1410 (D.R.I.1986)(collecting state and federal cases recognizing that no hearing is required "despite the presence of a 'no dismissal except for cause' rule, when a position is abolished pursuant to a bona fide government reorganization or kindred cost-cutting measure"); *Mermelstein v. Haner,* 436 F.Supp.

238, 241 (W.D.Va.1977)(upholding the abolition of classified positions resulting from budget cutbacks), *aff'd,* 588 F.2d 1350 (4th Cir.1978).

Here, we acknowledge the holding of the division in *Hughes v. Dep't of Higher Educ., supra,* that an employee whose job has been abolished is entitled to a hearing under § 24–50–125(5), C.R.S.2002. Nevertheless, we find these cases persuasive to the extent that, if due process does not require a hearing at all when a job is abolished, then affording a hearing, but placing the burden of proof on an employee complaining of job abolishment, cannot offend due process.

Apart from due process concerns, employee raises, and we recognize, the potential for job abolishment to be pretextual, "when implemented for the purpose of terminating, or in a manner which terminates, a disfavored or targeted employee or group of employees." *Hughes v. Dep't of Higher Educ., supra,* 934 P.2d at 894. However, the ALJ found, and employee does not challenge on appeal, that employee "did not even suggest an improper motive for his layoff."

■ Moreover, in a hearing under § 24–50–125(5), the employee can subpoena any employee or official of a state agency to appear and testify as well as to produce relevant documentary evidence. *See Brennan v. Dep't of Local Affairs, supra.* Given these procedural safeguards, we discern no need to impose the burden of proof on the employer merely because, in rare cases, discharge for job abolishment may be a pretext for discipline.

■ Employee further asserts that discharge for job abolishment requires the employer to bear the burden of proof for procedural efficiency, citing three factors discussed in *Kinchen:* the appointing authority knows the reasons for its actions and is in the better position to present this information to the hearing officer; placing the burden of proof on the employee requires the employee to prove that the events or actions in question did not happen; and it should be little hardship for the appointing authority to present this information to the hearing officer because it

should have made a thorough investigation before deciding to terminate the employee. We are not persuaded.

Here, employee reviewed and copied human resources documents pursuant to a discovery request. He also presented testimony from several college employees, including the college president and its director of human resources. Hence, we discern no significant procedural inefficiency from placing the burden of proof on employee. *See Brennan v. Dep't of Local Affairs, supra,* 786 P.2d at 428 ("no unfairness attends this [burden] simply by virtue of the fact that the Department may have more intimate access to such information").

Accordingly, we affirm the Board's adoption of the decision of the ALJ that employee bore the burden of proof.

## II.

Employee next argues the Board erred in adopting the ALJ's factual findings that the college had insufficient funds to continue his position and that the college used an appropriate layoff matrix. We do not agree.

 "On appellate review, an administrative decision will not be reversed if its findings are supported by substantial evidence when the record is considered as a whole." *Anderson v. Colo. State Dep't of Pers.,* 756 P.2d 969, 974 (Colo.1988).

### A.

■ An employee's failure to show funding from a specific source for a particular position defeats any claim that a budgetary layoff was arbitrary, capricious, or contrary to rule or law. *Brennan v. Dep't of Local Affairs, supra.*

With record support, the ALJ determined that the director of housing's request for additional funding was denied and as a result further renovation work was suspended. Accordingly, we conclude the Board properly adopted the ALJ's conclusion that employee failed to establish the college could continue to fund his position.

### B.

Section 24–50–124(1) provides that when certified employees are separated from state service due to lack of work, lack of funds, or reorganization, they shall be separated or demoted according to procedures established by rule.

■ The ALJ found that the human resources director who processed the layoff properly established a layoff matrix. The record shows that to create the matrix, the director looked at the classification structure and incumbents in that class; ran an employment history on each employee to determine previous positions and certifications; established three-year time bands pursuant to Board Rule 7–9; and assigned weight to seniority, class, evaluations, and veteran status.

Accordingly, we conclude the Board also properly adopted the ALJ's finding that the college followed appropriate procedures to abolish employee's position.

The order is affirmed.

Judge NEY and Judge PLANK * concur.