24CA1167 Marriage of Knipe 05-15-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1167
Boulder County District Court No. 20DR30096
Honorable J. Keith Collins, Judge

---

In re the Marriage of

Paul David Knipe,

Appellee,

and

Archana Singh Knipe,

Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE WELLING
Kuhn and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 15, 2025

---

Aitken Law, LLC, Sharlene J. Aitken, Denver, Colorado, for Appellee

Archana Singh Knipe, Pro Se

¶ 1    Archana Singh Knipe (wife) appeals the district court's judgment concerning the dissolution of her marriage with Paul David Knipe (husband). We affirm.

## I.    Background

¶ 2    In 2021, the court dissolved the parties' nineteen-year marriage and entered permanent orders. The court allocated to each party about $200,000 from the marital estate, awarded wife $1,100 per month in maintenance for a term of two years, and declined to award wife her attorney fees under section 14-10-119, C.R.S. 2024.

¶ 3    Wife appealed, and a division of this court reversed the permanent orders. *In re Marriage of Knipe*, (Colo. App. No. 21CA1598, May 4, 2023) (not published pursuant to C.A.R. 35(e)) (*Knipe I*). The division concluded that when the court divided the marital estate, it erred by (1) setting aside certain debts as wife's separate debt; (2) miscalculating wife's one-half share of the marital home equity; and (3) dividing the parties' personal property. *Id.* at ¶¶ 14-17, 21-23, 31-32. The division remanded the case and directed the district court to correct these property division errors,

1

redetermine maintenance and attorney fees, and address wife's request for appellate attorney fees. *Id.* at ¶¶ 33, 35-37.

¶ 4 On remand, the court allocated to husband half of the marital debts incorrectly excluded from the marital estate and corrected its calculation of the marital home equity so that wife received her equal share. The court also adopted the parties' agreement concerning most of the personal property. Regarding the few disputed personal property items that remain relevant to this appeal, the court (1) allocated to husband a guitar, finding that wife gifted it to him; and (2) excluded from the marital estate an engagement ring, finding that the ring had been lost. The court didn't disturb its remaining equal allocation of the marital estate.

¶ 5 The court also found that wife was voluntarily unemployed, and it imputed to her an income of $5,665 per month, which corresponded to the amount wife indicated she could earn at a local school district based on her level of experience and education. The court then found that wife could sufficiently provide for her reasonable needs through appropriate employment and therefore declined to award her maintenance.

¶ 6    And the court denied wife's request for attorney fees related to the dissolution proceedings and *Knipe I.*  But the court ordered wife to pay husband approximately $3,000 for the attorney fees and costs he incurred for filing two motions to compel wife's mandatory disclosures.

## II.    Wife's Potential Income

¶ 7    As part of wife's contentions related to property division, maintenance, and attorney fees, she argues that the court erred by finding her voluntarily unemployed and imputing to her a potential income of $5,665 per month.  Because this argument impacts multiple contentions, we address it first and discern no error.

¶ 8    A party is voluntarily unemployed when they are shirking their financial obligations by unreasonably forgoing employment that they could obtain.  *See In re Marriage of Collins*, 2023 COA 116M, ¶ 29.  When a court finds that a party is voluntarily unemployed, it imputes a potential income to that party.  *In re Marriage of Capparelli,* 2024 COA 103M, ¶ 34.  Potential income is an income that the party can reasonably earn from a full-time job commensurate with their demonstrated earning ability.  *Id.* at ¶ 35.

¶ 9    Whether a party is voluntarily unemployed and the potential income imputed to them are typically questions of fact. *See Collins*, ¶ 30; *In re Marriage of Connerton*, 260 P.3d 62, 66 (Colo. App. 2010). We won't disturb a court's factual findings if the record supports them. *See Collins*, ¶ 30; *Connerton*, 260 P.3d at 66.

¶ 10   When the parties married in 2002, wife worked as a teacher. She stopped teaching in 2011. Wife then cared for the family, and, for a few years, she tutored students and ran a chai tea business. At the initial permanent orders hearing, wife had been unemployed for about four years, and the parties agreed that the court could impute to her a monthly potential income of $3,667.

¶ 11   In 2022, wife moved to Oakland, California and worked as an elementary school teacher, earning a salary of $72,000 per year. About seven months later, wife left this job and moved back to Colorado.

¶ 12   At the remand hearing, wife reported that for the year she had lived in Colorado, she hadn't found a new job. She believed that arrests she had experienced a few years earlier were dissuading potential employers. But she conceded that the court could impute

4

her a potential income, saying that $50,000 per year was an appropriate amount.

¶ 13    Husband presented a vocational expert, who opined that based on wife's experience and education, she could earn $64,000 to $79,000 per year as a teacher. The expert disputed wife's claim that her arrest record impacted her ability to get a job, explaining that those records were sealed and not disclosed to potential employers. The expert also opined that, even if wife didn't return to teaching, she could pursue a sales and marketing job, earning around $70,000 per year.

¶ 14    After considering this evidence, the court determined that wife was voluntarily unemployed. The court then determined that wife could earn a potential income of $67,978 per year ($5,665 per month), which, as noted above, corresponded to the amount wife indicated she could earn at a local school district.

¶ 15    Wife disagrees with the court's findings, highlighting her inability to obtain a job and the court's previous finding that her potential income was only $3,667 per month. However, the court wasn't bound by its previous income finding. On remand, it had to determine wife's income and economic circumstances at the time of

the remand hearing. *See In re Marriage of Wright*, 2020 COA 11, ¶ 24. On remand, the court found wife's testimony concerning her lack of employment incredible, and after weighing the conflicting evidence, determined that wife could earn $5,665 per month. We must defer to the court's credibility determinations and its findings on the weight, probative force, and sufficiency of the evidence. *See Connerton*, 260 P.3d at 66. We therefore won't disturb the court's determinations when, as here, the record supports them. *See Collins*, ¶ 33.

### III. Property Division

¶ 16 Wife contends that the district court erred by improperly and inequitably dividing the marital estate. We disagree.

¶ 17 The court has great latitude to equitably divide the marital estate in such proportions as it deems just and equitable. *See* § 14-10-113(1), C.R.S. 2024; *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 28. We won't disturb the court's allocation absent a showing that the court abused its discretion. *Medeiros*, ¶ 28. A court abuses its discretion when it acts in a manifestly arbitrary, unreasonable, or unfair manner, or it misapplies the law. *Id.*

¶ 18     The court divided the parties' approximately $400,000 marital estate almost exactly in half.  In doing so, the court considered the parties' changed standard of living since the marriage and their present financial circumstances.  The court also considered wife's voluntary unemployment and found that she could meet her reasonable financial needs with her potential income.  And the court noted that wife was making numerous, unexplained cash withdrawals and payments, which were depleting her assets, and that husband shouldn't be responsible for her indiscriminate spending.  While wife believes she should have received a larger share of the marital estate, the court considered the relevant circumstances, and the record supports its allocation.  *See id.*; *see also In re Marriage of Hunt*, 909 P.2d 525, 538 (Colo. 1995) ("[A]n appellate court must not disturb the delicate balance achieved by the trial court in division of [marital] property . . . unless there has been a clear abuse of discretion.").

¶ 19     In advancing her contention that the court erred in dividing the marital estate, wife contends that the court improperly considered her voluntary unemployment.  We disagree.  Although wife suggests that the court was penalizing her for being

unemployed, the court had to consider all relevant factors, including a party's present economic circumstances. § 14-10-113(1)(c). And wife's voluntary unemployment was a relevant economic circumstance for the court to consider when equitably dividing the marital estate. *See id.*

¶ 20 Wife also argues that the court abused its discretion by dividing the parties' personal property. In doing so, wife reasserts many of her arguments challenging the court's initial orders on the mechanism for dividing these assets that she raised in *Knipe I.* However, the division reversed that portion of the court's permanent orders. The court corrected its allocation on remand, and thus, the aspects of the court's initial permanent orders that wife contends "effectively delegated the division" of personal property to husband no longer exist.

¶ 21 As for the court's allocation after remand, the court adopted the parties' agreement, which, in accordance with wife's request, allocated most of the personal property to her. Concerning the few personal property items disputed on remand, wife challenges the court's allocation of a guitar to husband and determination that an engagement ring was lost. At the hearing, husband testified that

wife gave the guitar to him as a gift. He also said that wife was the last person to have the engagement ring and that he had no idea where the ring was now. While wife disputed this testimony, the court found husband credible, and we may not reweigh its resolution of the conflicting evidence. *Medeiros*, ¶¶ 28, 54.

¶ 22 The court thus acted within its broad discretion to equally divide the marital estate.

## IV. Maintenance

¶ 23 Wife next contends that the court erred by not awarding her maintenance. We consider and reject her arguments.

### A. Legal Principles

¶ 24 We review the court's maintenance decision for an abuse of discretion. *See id.* at ¶ 58.

¶ 25 When the court considers a party's maintenance request, it must make findings concerning the parties' incomes, the distribution of marital property, the parties' financial resources, their reasonable financial need established during the marriage, and the tax consequences of any maintenance awarded. § 14-10-114(3)(a)(I), C.R.S. 2024. The court must then consider the advisory statutory guideline amount and term of maintenance, and

any other relevant circumstances, including a nonexclusive list of statutory factors, to determine a fair and equitable amount and term of maintenance. § 14-10-114(3)(a)(II)(A)-(B), (3)(b), (3)(c), (3)(e). The court may not, however, award maintenance unless it finds that the requesting party lacks sufficient property to provide for their reasonable needs and is unable to support themself through appropriate employment. § 14-10-114(3)(a)(II)(C), (3)(d).

## B.    Advisory Statutory Guidelines

¶ 26    Wife claims that the court didn't make any specific findings on the advisory statutory guideline amount and term of maintenance. But the court's ruling on remand expressly found that, based on the parties' incomes and the length of the marriage, "[t]he guidelines recommend that [h]usband pay maintenance to [w]ife in the amount of $1,201 per month for approximately ten . . . years." While wife notes the absence of those findings in the court's initial permanent orders, any error by the court in that ruling was rendered moot by the court's redetermination of maintenance on remand. *See In re Marriage of Salby*, 126 P.3d 291, 301 (Colo. App. 2005) (concluding that a court's later orders that superseded its

10

original order rendered a party's challenge to the original order moot).

¶ 27     To the extent wife also generally asserts that the court didn't make other statutorily required findings, she doesn't identify any that the court failed to make. *See In re Marriage of Drexler*, 2013 COA 43, ¶ 27 (declining to address an undeveloped argument).

### C.     Ability to Meet Wife's Reasonable Needs

¶ 28     Wife next argues that the record doesn't support the court's finding that she could sufficiently meet her reasonable needs through appropriate employment. We disagree.

¶ 29     At the remand hearing, wife reported total expenses of $4,430 per month and minimum debt payments of $960 per month on her sworn financial statement. The court found these reported expenses reasonable. The court also found that wife was voluntarily unemployed, was capable of working as a teacher, and had a potential income of $5,665 per month. *See* § 14-10-114(8)(c)(IV).

¶ 30     Given the record support for these findings, we don't agree with wife that the court erred by determining that she could provide for her reasonable needs with her potential income from appropriate

11

employment. *See Medeiros*, ¶¶ 54, 58. And contrary to wife's conclusory claim, nothing in the court's determination suggests that the court required her to deplete her share of the marital assets before she could qualify for maintenance. *See In re Marriage of Nordahl*, 834 P.2d 838, 842 (Colo. App. 1992).

## D. Inappropriate Factors

¶ 31 Wife further argues that the court considered improper factors when it determined maintenance. However, other than her dispute with the court's income imputation, rejected above, wife directs us to no improper factors considered by the court on remand. Rather, she highlights factors that the court discussed in its initial permanent orders. But, as noted above, the court's initial maintenance determination has been rendered moot. *See Salby*, 126 P.3d at 301.

## E. Manifestly Inequitable

¶ 32 Wife also argues that the court's maintenance decision was manifestly inequitable. She highlights that she was married to husband for nineteen years, she made noneconomic contributions to the marriage, husband earned a higher income, and she was struggling to find a job.

¶ 33    But the court considered the relevant factors under section

14-10-114(3)(c) and determined, with record support, that not

awarding wife additional maintenance was fair and equitable under

the totality of the circumstances. *See In re Marriage of Atencio*, 47

P.3d 718, 722 (Colo. App. 2002) (providing that we will not disturb

a court's maintenance determination when the record supports it).

The court acknowledged the length of the marriage and the

disparity in the parties' incomes, but it found that wife had already

received two years of maintenance from husband and that her

economic circumstances didn't warrant further spousal support.

*See* § 14-10-114(3)(c)(I), (V), (VII), (VIII).  The court explained that

wife was fully capable of being employed but that, during the five

years the parties have been separated, she worked for only one of

those years.  *See* § 14-10-114(3)(c)(V), (XIII).  The court also found

that even though wife was presently unemployed, she was making

significant, unexplained cash withdrawals and payments from her

accounts and that husband shouldn't be responsible for her

conduct.  *See* § 14-10-114(3)(c)(I), (XIII).  The court further found

that husband was financially supporting the parties' adult children

without wife's assistance.  *See* § 14-10-114(3)(c)(II), (XIII).  And the

court recognized that wife received an equal share of the marital estate.  *See* § 14-10-114(3)(c)(IV).

¶ 34    The court thus acted within its discretion by declining to award wife additional maintenance.

## V.    Attorney Fees

¶ 35    Wife contends that the court erred by not awarding her attorney fees related to the dissolution proceeding and her first appeal.  We disagree.

¶ 36    To ensure that a party in a dissolution proceeding doesn't suffer undue economic hardship, a court may equitably apportion attorney fees and costs between parties based on their relative economic circumstances.  *Collins*, ¶ 49; *see* § 14-10-119.  We won't disturb the court's decision absent a showing that it abused its discretion.  *See Collins*, ¶ 51.

¶ 37    Again, the court found that even though wife was currently unemployed, she was fully capable of finding a job to meet her reasonable needs.  It then found that the parties had incurred a similar amount of attorney fees and that when accounting for wife's potential income, the parties' financial circumstances were "similar

enough" that husband should not be ordered to pay her attorney fees.

¶ 38     In light of the record support concerning the parties' economic circumstances, the court didn't abuse its discretion by declining to award wife attorney fees under section 14-10-119.

¶ 39     To the extent wife also disagrees with the court's ruling that directed her to pay a portion of husband's attorney fees, the court awarded those fees as sanctions for wife's failure to comply with her disclosure obligations during the dissolution proceedings on remand.  *See* C.R.C.P. 16.2(j).  And wife develops no legal or factual argument to explain why the court erred by doing so.  *See Drexler*, ¶ 27.

## VI.     Appellate Attorney Fees and Costs

¶ 40     Wife asks us to award her attorney fees in connection with this appeal, *Knipe I*, and the remand proceedings.  However, the district court already resolved wife's request for attorney fees in connection with *Knipe I* and the remand proceedings.  We are affirming the court's denial concerning those fees.  And we reject wife's request for attorney fees related to this appeal because wife is representing herself, and there is no legal basis to award attorney fees to a non-

15

attorney pro se litigant. *See Smith v. Furlong*, 976 P.2d 889, 890 (Colo. App. 1999).

¶ 41    Husband asks for an award of his appellate attorney fees, arguing that wife's appeal is frivolous and groundless. *See* § 13-17-102(4), C.R.S. 2024; C.A.R. 38(b). Even though unsuccessful, we don't agree that wife's appeal warrants such an award. *See Glover v. Serratoga Falls LLC*, 2021 CO 77, ¶ 70 (noting that we award such attorney fees only in clear and unequivocal cases of egregious conduct where no rational argument is presented); *see also* § 13-17-102(6) (When a party is not represented by an attorney, the court must find that "the party clearly knew or reasonably should have known" that the action "was substantially frivolous, substantially groundless, or substantially vexatious" before it may assess attorney fees against that pro se party.). We therefore deny his request.

¶ 42    Costs are taxed in accordance with C.A.R. 39(a)(2).

### VII.   Disposition

¶ 43    The judgment is affirmed.

JUDGE KUHN and JUDGE SCHUTZ concur.